BLACK
MARJIEH &
SANFORD LLP

October 7, 2026

**VIA ECF**

Hon. Analisa Torres, District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**PRE-MOTION LETTER**

Re: *Alvarez Benedicks et al. v. United States of America and Loyal Source Government Service, LLC*
Case Docket No. : 1:26-cv-02966-AT (S.D.N.Y.)
BM&S File No. : 399.0412

Dear Judge Torres:

We write on behalf of Defendant Loyal Source Government Services LLC ("Loyal Source") regarding the pleading deficiencies in Plaintiffs' First Amended Complaint ("Complaint") that warrant dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or a more definite statement under Rule 12(e). Separately, and regardless of dismissal, Loyal Source intends to seek transfer of the entire action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Pursuant to Rule III(B)(ii) of your Individual Practices in Civil Cases, Loyal Source and Plaintiffs have already exchanged the first set of pre-motion letters.

## I. Pleading Deficiencies in Complaint.

Independent of transfer, the Complaint is subject to dismissal or re-pleading on several grounds. *See Ashcroft v Iqbal*, 556 US 662, 678-79 [2009]; *Bell Atl. Corp. v Twombly*, 550 US 544, 555 [2007].

### A. The TMLA and Common Law Claims Cannot Co-Exist.

The Complaint impermissibly asserts both Texas Medical Liability Act ("TMLA") and common law negligence claims based on the same underlying facts. The Texas Supreme Court has squarely prohibited this practice. In *Yamada v Friend*, 335 SW3d 192, 193 [Tex 2010], the Court held that "claims against a health care provider based on one set of underlying facts can[not] be brought as both health care liability claims subject to the [TMLA] and ordinary negligence claims not subject to the TMLA." *Id.* The Court rejected the argument that alternative

pleading could circumvent the TMLA's requirements, explaining that "when the underlying facts are encompassed by provisions of the TMLA in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims" and that "[a]pplication of the TMLA cannot be avoided by artfully pleading around it or splitting claims into both health care liability claims and other types of claims such as ordinary negligence claims." *Id.* at 193-94. This rule turns on "the underlying nature of the claim" rather than "the form of the pleadings." *Lake Jackson Med. Spa, Ltd. v Gaytan*, 640 SW3d 830, 837 n.4 [Tex 2022] (internal quotations and citations omitted).

Here, Plaintiffs assert negligence, gross negligence, negligent supervision and training, and medical malpractice claims against Loyal Source (Counts 12-15), all arising from the same course of medical treatment at government facilities. To the extent the TMLA governs, the common law claims must be re-pleaded as health care liability claims or dismissed.

**B. Plaintiffs' Respondeat Superior Theory Fails on the Face of the Complaint**

Plaintiffs seek to hold Loyal Source vicariously liable for the acts of medical personnel stationed at U.S. Customs and Border Protection ("CBP") facilities. To sustain a respondeat superior claim, however, Plaintiffs must plausibly allege that Loyal Source retained control over the manner and means of those employees' work. *See Limestone Products Distrib., Inc. v McNamara*, 71 SW3d 308, 312 [Tex 2002]; *Messner v Edison Healthcare, LLC*, 3:26-CV-00127-LS, 2026 WL 1981435, at *5-6 [WD Tex June 15, 2026], *report and recommendation adopted,* 3:26-CV-00127-LS, 2026 WL 1978944 [WD Tex July 8, 2026]. The Complaint alleges the opposite.

Plaintiffs' own allegations establish that CBP exercised pervasive control over every material aspect of the working environment: Loyal Source personnel worked exclusively within CBP-operated facilities (Compl. ¶¶ 21-22; 31); performed their duties pursuant to CBP's TEDS standards and the *Flores* agreement rather than Loyal Source protocols (Compl. ¶¶ 135-153); used CBP's electronic medical records system (Compl. ¶ 43); and were subject to CBP's authority over patient transfers and movement (Compl. ¶¶ 31, 54, 71, 89). CBP even unilaterally revoked facility access for individual Loyal Source employees after the death (Compl.¶ 82), a hallmark of the special employer's right to control. *See Leckness v Caldwell*, 7:17-CV-00239, 2018 WL 4103029, at *8 [SD Tex July 23, 2018]

These facts describe a classic borrowed servant arrangement, and the Complaint contains no allegations that Loyal Source retained day-to-day control over its personnel's work at CBP facilities. Where, as here, the applicability of the defense is apparent from the face of the pleading, dismissal is appropriate. *See Hernandez v Kanlic*, 583 SW3d 878, 885-86 [Tex App 2019]. At minimum, a more definite statement under Rule 12(e) is warranted, as the Complaint's silence on the locus of control leaves Loyal Source unable to frame a responsive pleading on this issue.[1]

---

[1] Plaintiffs' theory also creates an internal inconsistency with their FTCA claims. Plaintiffs repeatedly characterize Loyal Source personnel as "the United States and its employees, officers, and agents, including, but not limited to, LSGS" (Compl. ¶ 39; *see* also Compl. ¶¶ 80-81) to impute liability to the government, while simultaneously seeking to hold Loyal Source separately liable for those same employees' conduct. These theories are in considerable tension, and the Complaint makes no effort to reconcile them. Loyal Source reserves all rights to raise the borrowed servant, dual employment doctrines, derivative sovereign immunity, and related defenses in its responsive pleading.

### C. The Complaint Fails to Join Necessary Parties

Plaintiffs attribute specific acts of alleged negligence to multiple, distinct Loyal Source medical personnel, yet fail to identify or join any of them as parties. The Complaint describes at least six individuals whose conduct forms the basis of Plaintiffs' claims, including staff who allegedly refused to review medical records (Compl. ¶ 41), personnel who treated the alleged 104.9-degree fever with only palliative measures (Compl. ¶ 59), and staff who performed a "cursory check" and sent the decedent back to her cell hours before her death (Compl. ¶ 67). CBP itself identified "several medical contractors who were directly involved" in the care and revoked their facility access. Compl. ¶ 82.

These individuals are necessary parties under Rule 19(a). Their absence prejudices Loyal Source in at least two respects. First, it prevents proper apportionment of fault under the proportionate responsibility framework of Texas, which requires the factfinder to determine the percentage of responsibility attributable to each person whose conduct caused the harm. Tex. Civ. Prac. & Rem. Code Ann. § 33.003. The Complaint attributes distinct acts to distinct individuals but collapses them all into a single theory of corporate vicarious liability, depriving Loyal Source of its right to allocate fault among the individual actors and between those actors and CBP personnel who controlled critical decisions such as patient transfers. *See* Compl. ¶¶ 54, 61-62, 89. Second, if any individual provider qualifies as a "health care provider" under the TMLA, Plaintiffs' failure to name them obscures the applicability of the Act's expert report requirements and damages limitations. Tex. Civ. Prac. & Rem. Code Ann. §§74.351, 74.301.

These identities are known or readily ascertainable. CBP investigated the death and identified specific contractors (Compl. ¶ 82); the *Flores* monitor and the Senate Judiciary Committee examined the care received from identified personnel (Compl. ¶¶ 86-90, 108-118); and Plaintiffs' own administrative claim to CBP necessarily identified the individuals at issue (Compl. ¶ 15). This is not a case of unknown parties.

### D. The Intentional Infliction of Emotional Distress Claims are Legally Barred

Plaintiffs' claims for intentional infliction of emotional distress ("IIED") in Counts 16 and 17 should be dismissed because IIED is a "gap-filler" tort under Texas law. The Texas Supreme Court has recognized that IIED is available only when a plaintiff has no other recognized cause of action for the alleged conduct. *Std. Fruit and Vegetable Co., Inc. v Johnson*, 985 SW2d 62, 68 [Tex 1998]; *Hoffmann-La Roche Inc. v Zeltwanger*, 144 SW3d 438, 447 [Tex 2004]. Where, as here, Plaintiff has pleaded multiple alternative theories of recovery—including negligence and health care liability claims—arising from the same facts, an IIED claim cannot stand. Because Plaintiff's other causes of action adequately cover the alleged wrongful conduct, IIED is unavailable as a matter of law, and Counts 16 and 17 should be withdrawn.

This conclusion is reinforced if Plaintiff's claims proceed under the TMLA, which expressly incorporates the definition of "noneconomic damages" from Chapter 41 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(20), 74.301 (West). Mental anguish is expressly enumerated within the statutory definition of noneconomic damages, Tex. Civ. Prac. & Rem. Code Ann. § 41.001(12) (West) and is therefore subject to the TMLA's $250,000 cap on noneconomic damages. The Fifth Circuit has confirmed this framework. *See Ellis v. United States*, 673 F3d 367, 378 [5th Cir 2012]. Permitting a standalone IIED claim to proceed alongside TMLA-governed claims would allow Plaintiffs to circumvent these statutory

limitations by repackaging the very same mental anguish damages already accounted for under the TMLA as an independent tort. Texas does not permit such an end-run around the Legislature's considered damages framework. *See Bishara v Texas Health Harris Methodist Hosp. Fort Worth Inc.*, 02-20-00316-CV, 2021 WL 3085748, at *4 [Tex App July 22, 2021]; *Broxterman v Carson*, 309 SW3d 154, 158 [Tex App 2010].[2]

Respectfully submitted,

**BLACK MARJIEH & SANFORD LLP**



Sheryl A. Sanford, Esq. (SAS 5680)

*Counsel for Defendant*
*Loyal Source Government Services LLC*

[2] Should a Court find that the TMLA does not apply to Plaintiffs' claims, Loyal Source expressly reserves all rights to challenge Plaintiffs' IIED claims on any and all grounds, including but not limited to the independent bases set forth elsewhere in this briefing. Loyal Source further reserves the right to seek apportionment of fault with respect to any IIED claim that is permitted to proceed, whether under TMLA's framework or under general state law tort principles. The foregoing TMLA analysis is offered as an additional and alternative basis for dismissal or limitation of Plaintiffs' IIED claims and does not limit or waive any other defense or argument available to Loyal Source.